1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   STEPHEN C REED,                          Case No.  22-cv-02657-JSW

8                          Plaintiff,

9          v.                               **ORDER GRANTING MOTION FOR
                                            SUMMARY JUDGMENT; DENYING
10  B. CHAVEZ, et al.,                      MOTION FOR SCHEDULING ORDER**

11                         Defendants.       Re: Dkt. Nos. 18, 19

12                            **INTRODUCTION**

13        Plaintiff is a California prisoner proceeding pro se who filed this civil rights action under

14  42 U.S.C. § 1983 against officials at Salinas Valley State Prison ("SVSP").  The operative

15  complaint is the First Amended Complaint ("FAC") against SVSP officials E. Howard, J.

16  Sanchez, A. Gullo, A. Selby, B. Chavez, and T. Gonzalez.  Defendants have filed a motion for

17  partial summary judgment.  Plaintiff has filed an opposition, and Defendant has filed a reply brief..

18  For the reasons discussed below, the motion for summary judgment is GRANTED.

19                            **BACKGROUND**

20        1.      Plaintiff's Claims

21        Plaintiff makes two claims.  First, he claims Defendants violated his First Amendment

22  rights by retaliating against him for filing an administrative grievance (log number 158280)

23  against Defendant Chavez.  He claims they retaliated against him with "frivolous" disciplinary

24  writeups (called Rules Violations Reports ("RVR"s) or "115s") and by ceasing to call him in for

25  his prison job as a "porter."[1][2]  (ECF No. 8 at 3-5.)  Second, Plaintiff claims Defendants, who

26

27  _____
    [1] Porters are responsible for keeping certain areas of the prison clean, in Plaintiff's case his unit's
    program office and patio area.
28  [2] Plaintiff also alleges Defendants Howard, Shelby, Gullo, and Gonzalez, inadequately
    investigated his administrative grievance concerning his work assignment.  (*See* ECF No. 8 at 4-

United States District Court
Northern District of California

1    supervised him and other porters, discriminated against him based on his race when they did not

2    call him and other African American inmates into work and when they created problematic

3    working conditions for him and other African American inmates when they were working.  These

4    conditions consisted of close supervision; false accusations of stealing, "prying," not cleaning, and

5    "disturbing staff"; and not allowing them to sit on patio benches.  (ECF No. 8 at 6.)

6              2.    Administrative Grievances

7              On August 29, 2021, Plaintiff submitted grievance number 158280 complaining that after

8    Plaintiff had verbal dispute with Chavez's wife (another prison employee), Chavez improperly

9    warned him and searched his cell without adequate COVID-19 safety precautions.  Non-defendant

10   officials reviewed and investigated this grievance, denied it in part and granted it in part, assigned

11   a separate log number to the claim regarding COVID-19 precautions, and referred that claim to

12   another department.

13             On December 22, 2021, Plaintiff submitted grievance number 201929 against all

14   Defendants complaining that Defendants have not allowed him to continue his work assignments

15   in retaliation for Plaintiff's filing grievance number 158280 against Chavez.  This grievance was

16   subsequently referred to other CDCR officials, renumbered twice, and eventually denied on

17   December 20, 2022, with the explanation that staff shortages prevented continuing Plaintiff in his

18   work assignment.

19             3.    Rules Violations Reports[3]

20             On August 21, 2021, a non-defendant correctional officer who is the wife of Defendant

21   Chavez got into a verbal dispute with Plaintiff.  On that day, this correctional officer issued an

22   RVR (number 7114194) against Plaintiff for "disrespect without potential for violence or

23   disruption" based upon Plaintiff's use of profanity.   Defendant Howard found Plaintiff guilty of

24   the charge on September 21, 2021.  The RVR was approved by a non-defendant official.

25             On August 25, 2021, Defendant Chavez issued Plaintiff an RVR (number 7115952) for

26

27   5.)  Defendants state that this a third form of retaliation claimed by Plaintiff, but for the reasons
     discussed below, the Court finds it is not.

28   [3] The Court describes only the three RVRs that Plaintiff asserts were retaliatory in his deposition.
     (Pl. Depo. at 81.)

United States District Court
Northern District of California

delaying an officer in performing his duties based on Plaintiff's refusal to leave his cell for a search.  Non-defendant officials approved this RVR on August 28, 2021, and found Plaintiff guilty of the charge on September 24, 2021.

On March 18, 2022, Defendant Chavez issued Plaintiff another RVR (number 7168778 ) for "disrespect without potential for violence or disruption" based upon Plaintiff's use of profanity against him.  Defendant Howard approved the RVR, and on April 4, 2022, a non-defendant official found Plaintiff guilty.  Plaintiff's administrative grievances challenging these RVRs were denied.

Plaintiff claims all of these RVRs are false and were in retaliation for administrative grievance number 158280 against Chavez.

### 4. Plaintiff's Work Assignment

Plaintiff became a full-time porter on January 17, 2020.  Defendants supervised the porters, including Plaintiff, who are responsible for keeping the program office and patio in Plaintiff's section of SVSP clean.  Porters are not called to work if there are not enough prison staff to supervise them, there is no work, or there is a prison-wide restriction on prisoners requiring them to stay in their cells.  According to Plaintiff, Chavez never supervised him, Plaintiff was the only African-American porter, and Defendant Sanchez allowed other inmates who are Hispanic to work less hard.  On December 9, 2021, Plaintiff no longer was called to work as a porter.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those

United States District Court
Northern District of California

1   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

2   issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party

3   has met this burden of production, the nonmoving party must go beyond the pleadings and, by its

4   own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.

5   If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact,

6   the moving party wins. *Id.*

7   **II.    Analysis**

8        1.    Retaliation

9        Plaintiff claims Defendants violated his First Amendment rights by retaliating against him

10  for filing administrative grievance number 158280 against Defendant Chavez.  The asserted

11  retaliation took the form of "frivolous" RVRs and not calling him into work.  (ECF No. 8 at 3-5.)

12       "Within the prison context, a viable claim of First Amendment retaliation entails five basic

13  elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because

14  of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of

15  his First Amendment rights, and (5) the action did not reasonably advance a legitimate

16  correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

17  "[M]ere speculation that defendants acted out of retaliation is not sufficient to show causation."

18  *Wood v. Yordy*, 753 F.3d 899, 904-05 (2014).  A retaliation claim will not stand when premised

19  simply on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because

20  of this.'" *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). The inmate must

21  demonstrate a nexus between the alleged adverse conduct and the protected speech. *Id.*; *see Pratt*

22  *v. Rowland*, 65 F.3d 802, 807 (1995) (finding timing and speculation alone insufficient for

23  retaliation claim).  There must be a showing that the adverse action was taken out of "retaliatory

24  animus" to "silence and punish" the inmate based on their protected conduct, and not for some

25  other reason. *Shepard v. Quillen*, 840 F.3d 686, 690-91 (9th Cir. 2016).

26       The asserted adverse actions by Defendants are three RVRs (numbers 7114194, 7115952,

27  and 7168778) and ceasing to call Plaintiff to his job assignment.  The asserted protected speech is

28  grievance 158280.  The problem with Plaintiff's retaliation claim is there is no evidence of a nexus

4

1    between the two, i.e. that the protected speech caused the adverse actions.

2        First, to the extent Plaintiff claims the *issuance* of the RVRs were retaliatory, two of them

3    (RVRs 7114194 and 7115952) were issued before Plaintiff filed grievance 158280: these RVRs

4    were issued on August 21 and 25, 2021, respectively, while Plaintiff filed grievance 158280 on

5    August 29, 2021.  Therefore, the issuance of these two RVRs could not have been caused by, or in

6    retaliation for, the grievance 158280.

7        Second, even after these two RVRs were issued, the only Defendant involved with them in

8    any manner was Howard, who, on September 22, 2021, held the hearing on RVR 7114194 and

9    found Plaintiff guilty of violating the prison rule of "disrespect without potential for violence or

10   disruption."  Although Howard made this finding *after* Plaintiff filed grievance 158280, there is no

11   evidence he did so *because of* grievance 158280.  There was ample evidence presented to Howard

12   to support his finding that Plaintiff had shown "disrespect" to a correctional officer: the report

13   Howard received stated Plaintiff shouted "a bunch of B words," "[f]uck you bitch, fuck you!" and

14   "[f]uck you skinny bitch, fuck you!" at a non-defendant officer.  (ECF No. 18-2 at 6.)  Plaintiff

15   disputes the accuracy of this evidence, but simply asserting the evidence was not true or that the

16   guilty finding was false and retaliatory does not constitute evidence Howard's actions were caused

17   by grievance 158280.  Plaintiff does not present any evidence Howard even knew about grievance

18   158280, which did not mention Howard, let alone that Howard found Plaintiff guilty showing

19   disrespect to a correctional officer because of it.  Plaintiff's conclusory statement that this RVR

20   was retaliatory does not create a triable issue as to whether Howard found him guilty because of

21   Plaintiff's protected speech, an essential element of a First Amendment retaliation claim.

22       Third, as with the above two RVRs, there is similarly no evidence --- other than timing and

23   Plaintiff's speculation --- that either the third RVR (number 7168778), or the discontinuation of

24   Plaintiff's job assignment, were caused by grievance 158280.  RVR number 7168778 --- for

25   showing "disrespect" to a correctional officer --- was supported by evidence Plaintiff said to

26   Chavez, "Fuck you Chavez and stick that flashlight up your ass" and "That's right walk away and

27   stick that flashlight up your ass."  (ECF No. 186-2 at 26.)  The only evidence about the reason

28   Plaintiff's job assignment was discontinued is there was a shortage of staff (due to the COVID-19

United States District Court
Northern District of California

5

1   pandemic) necessary to supervise inmates on their job assignments.  (*See*, *e.g.*, ECF Nos. 18-6 ¶ 3,

2   18-13 ¶ 3; 18-8 at 16; 8 at 4[4].)  There is no evidence any Defendant or other official mentioned

3   grievance 158280 in issuing or deciding RVR number 7168778 or discontinuing his job

4   assignment, or any other evidence of a connection with grievance 158280.  Plaintiff contends the

5   evidence used to support this RVR and discontinuation of his work assignment were false, but

6   again simply asserting this evidence was not true is not evidence these adverse actions were taken

7   because of Plaintiff's speech, i.e. grievance 158280.  And, as explained, the fact these adverse

8   actions were taken *after* grievance 158280 does not raise a triable issue as to whether these actions

9   were taken *because of* grievance 158280.

10      Plaintiff makes several in his opposition that there is evidence showing he was not called

11   into work because of grievance 158280: (1) he has not returned to work; (2) his grievances remain

12   unresolved; (3) Defendant Selby removed him from a list of critical workers and told him on

13   October 24, 2022, he would not come back to work no matter how many grievances he filed; (4)

14   Defendants Howard, Selby, Gonzalez, and Gullo laughed when another inmate (Godbolt) asked

15   them to return Plaintiff to work; and (5) another inmate (Barnes) received a job change after

16   speaking with Sergeant Howard.  (ECF No. 20 at 10.)

17      As an initial matter, the facts asserted in the opposition cannot be considered evidence

18   because the opposition is not verified, and Plaintiff does not submit a declaration by him attesting

19   to such facts.[5]  As for Plaintiff's above five arguments:

20      First, there is no evidence Plaintiff has not returned to work, but even if such evidence

21   could be presented, this does not show that this was because of grievance 158280 as opposed to

22   for some other reason, including the reasons discussed above regarding staff shortages and

23

24   ───────────────────────

[4] Plaintiff's verified FAC states the "reasoning" prison officials provided for denying Plaintiff's
25   administrative grievance of the discontinuation of his work assignment was "Covid-19 and staff
    shortage."  (ECF No. 8 at 4.)  Based upon the other evidence presented that sufficient staff was
26   necessary to supervise inmate-porters, as well as the fact that his job assignment was discontinued
    in December 2021, when the COVID-19 pandemic may have been affecting prison staffing, the
27   Court interprets this statement in the FAC to mean prison officials told Plaintiff his work
    assignment was discontinued because of staff shortages related to the COVID-19 pandemic.
28   [5] The attachments may be considered evidence and are discussed below to the extent they are
    relevant.

1    COVID-19.

2        Second, it is not clear which grievances Plaintiff is referring to that remain pending, and

3    Plaintiff's exhibits show all of his administrative grievances have been "closed" (*id.* at 19).

4    Moreover, it is also not clear how any unresolved grievances would show Defendants had

5    retaliatory motive for not calling him into his job assignment.

6        Third, the attachments indicate that two non-defendant officials compiled the list of critical

7    inmates who would return to work(*id.* at 41, 43-45), with the exception of one occasion when

8    Defendant Selby identified one inmate --- not Plaintiff --- as a porter (*id.* at 40).  There is no

9    evidence, however, Selby knew about grievance 158280, let alone this grievance had anything to

10   do with not calling him to work.  There is also no evidence Selby made the statement to Plaintiff

11   he would not return to work no matter how many grievances he filed.  Also, as there is no

12   evidence Selby knew about grievance 158280, this statement does not permit a reasonable

13   inference Selby was tying Plaintiff's not returning to work to that grievance as opposed to other

14   non-retaliatory reasons such as a staffing shortage.

15       Fourth, Defendants Howard, Selby, Gonzalez, and Gullo laughing at Godbolt's request

16   does not, without more, reasonably support an inference these Defendants refused Plaintiff's

17   return to work because of grievance 158280.  There is, in any event, no evidence these Defendants

18   knew about that grievance.

19       Fifth, it is not clear how Howard's giving another inmate a job change could support an

20   inference Howard failed to call Plaintiff into work because of grievance 158280.  In any event,

21   there is no evidence Howard knew about grievance 158280.

22       For these reasons, the Court concludes there is no triable issue as to whether the asserted

23   adverse actions by Defendants, i.e. the RVRs and the failure to continue his work assignment,

24   were caused by Plaintiff's speech, i.e. grievance 158280.  As this is an essential element of a

25   retaliation claim, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

26       2.    Racial Discrimination

27       Plaintiff claims Defendants discriminated against him based on his race when they stopped

28   calling him to his work assignment, and, when Plaintiff was working, they created problematic

conditions for him and other African American inmates, including supervising them more closely, accusing them of stealing, "prying," not cleaning, and "disturbing staff" without evidence, and not allowing them to sit on benches for breaks.  (ECF No. 8 at 6.)

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Prisoners are protected under the Equal Protection Clause . . . from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted).  An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class.  *Hartmann v. Cal. Dep't. of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).  "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class."  *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).  "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status."  *Id.* (internal quotation marks and citation omitted). "To avoid summary judgment, [the plaintiff] 'must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated.'" *Id.* (quoting *Bingham v. City of Manhattan Beach*, 329 F.3d 723, 732 (9th Cir. 2003)).

There is no evidence that Defendants did not allow Plaintiff to return to his work assignment and created problematic working conditions when he was working because of his race. Plaintiff attempts to show a racially discriminatory purpose by arguing that they also treated other African American inmates in this manner.  He submits the declarations of two African-American inmates stating they, like Plaintiff, were not called back to work (ECF No. 20 at 31-33).  However, Plaintiff's other evidence shows 29 other African-American inmates were put on the critical worker list and allowed to return to work (*id.* at 12, 40-41, 43-45).  No reasonable inference can be drawn from this evidence that Defendants did not call African American inmates as a whole, or Plaintiff in particular, back to work because of their race insofar as the evidence shows a great number more African-American inmates were allowed to return to work than the three inmates (Plaintiff and two others) who were not called in.  Plaintiff argues that his evidence shows 78

1   "Hispanic/White" inmates were called back to work (*id.* at 12), but without evidence that the ratio

2   of White, Hispanic, and African-American inmates called back to work was disproportionate to

3   the overall population of inmates eligible to return to work, this evidence does not support a

4   reasonable inference of discrimination against African Americans.

5         With respect to Plaintiff's allegations of problematic conditions on the job when he was

6   working, Plaintiff submits the declaration of one other African-American inmate who states he

7   experienced similar working conditions.  (*Id.* at 31.)  There is no evidence that workers of other

8   races were not also subject to the same working conditions.  Without that evidence, no reasonable

9   fact-finder could conclude that Defendants treated Plaintiff (and the other inmate) differently on

10  the job than other similarly situated inmates of other races.  And there is no other evidence that

11  Defendants subjected Plaintiff to poor working conditions because of his race.

12        For these reasons, the evidence does not support a triable issue as to whether Defendants

13  did not call Plaintiff to return to work or caused problematic conditions on the job because of his

14  race.  As this is an essential element of his equal protection claim, Defendants are entitled to

15  summary judgment on this claim as well.

16        3.    Investigation

17        As noted above, Defendants state Plaintiff claims Defendants' inadequate investigation of

18  his administrative grievances was another form of retaliation for grievance 158280.  This is not a

19  fair interpretation of the allegations in the FAC, even when liberally construed.  Plaintiff does not

20  allege anywhere in the FAC the inadequate investigation was in retaliation for filing grievance

21  152820 or for any other protected speech.  Rather, the FAC simply alleges the investigation of the

22  grievance was inadequate.  An inadequate investigation or processing of an administrative

23  grievance does not in and of itself implicate any constitutional right because there is no

24  constitutional right to a prison administrative grievance system.  *See Ramirez v. Galaza*, 334 F.3d

25  850, 860 (9th Cir. 2003).  And because the FAC, even when liberally construed, does not claim

26  this investigation was retaliatory, the Court finds the FAC states no cognizable claim for relief

27  against Defendants for inadequately investigating his administrative grievance regarding his work

28  assignment.

United States District Court
Northern District of California

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

4.      <u>Summary Judgment Motion</u>

Defendants label their motion as a motion for "partial" summary judgment.  This appears
to be a mistake because the motion makes at least two arguments that seek summary judgment on
the entirety of Plaintiff's claims.  (ECF No. 18 at 14-17 (Section III arguing entirety of retaliation
claim fails for failure to show causation), 17-28 (Section IV arguing entirety of discrimination
claim fails for failure to show discriminatory intent).)  The Court concludes, for the reasons
discussed above, Defendants are entitled to summary judgment on the entirety of Plaintiff's two
claims; no portion of these claims remain.  Based upon this conclusion, judgment will be entered
against Plaintiff.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.  The
motion for appointment of counsel and a settlement conference is DENIED.[6]

Judgment is entered in favor of Defendants.

**IT IS SO ORDERED.**

Dated: December 5, 2023

_____
JEFFREY S. WHITE
United States District Judge

---

[6] This motion also seeks a "scheduling order."  Such an order is unnecessary in light of the
schedule and other matters ordered in the order of service.